William E. GROOME and Vicki
L. Groome, Appellants,

v.

DONLIN CORP., Kevin Masterson,
Anne W. Nestrick Trust, Beverly A.
Masterson Family Trust, Don W. Mas-
terson Family Trust, and John Wer-
ner, Appellees.

No. 74A04–0809–CV–521.

Court of Appeals of Indiana.

June 23, 2009.

C. Richard Martin, Martin & Martin, Boonville, IN, Attorney for Appellants.

Richard A. Wetherill, Rockport, IN, Attorney for Appellees.

## OPINION

FRIEDLANDER, Judge.

In this consolidated appeal, William and Vicki Groome appeal the trial court's order setting aside tax deeds for royalty interests from an oil and gas lease relating to parcels of real estate owned jointly and/or individually by Donlin Corp., Kevin Masterson, Anne Nestrick Trust, Beverly Masterson Family Trust, Don Masterson Family Trust, and John Werner (the Appellees). The Groomes present the following restated issues on appeal:

1. Did the trial court lack subject matter jurisdiction to rule upon the Appellees' complaints to set aside the tax deeds?

2. Did the trial court err in determining that the Appellees were persons entitled to notice pursuant to Ind. Code Ann. § 6–1.1–25–4.5 (West, PREMISE through 2008 2nd Regular Sess.)?

3. If the Appellees were entitled to notice, does the evidence support a finding that they were not properly given notice?

We affirm.

As best we can discern from the slender record before us, the facts are as follows. In 1951, an oil and gas lease was executed by Frank and Florence Varner, husband and wife, and Bennie and Odas Varner, husband and wife, with Sun Oil Company (the Varner Lease).[1] Soon thereafter, the Varner Lease was recorded in the Spencer County oil and gas lease records. The lease encompassed a 160–acre area in the northeast quarter of section twenty, township six south, range four west, Huff Township, Spencer County, Indiana. It appears from the record that the couples owned separate parcels of land within the northeast quarter of section twenty and, accordingly, held different royalty interests under the lease. Frank and Florence had a royalty interest of 0.0062500 under the Varner Lease, while Bennie and Odas had a .08437600 royalty interest.

The subsequent chain of title with respect to Bennie and Odas's parcel is not complex. Bennie appears to have predeceased Odas and, upon Odas's death, their real estate was sold (along with other property not at issue in this case) to Donlin Corp. pursuant to a personal representative's deed executed and duly recorded in 1993. The deed specifically indicated that the grant was subject to the Varner Lease. Moreover, the deed did not reserve any mineral interest (such as, rights to future royalties under the Varner Lease) for Odas's estate. Though the record is not clear in this regard, Donlin Corp. subsequently sold a portion of the real estate to Kevin Masterson. Donald

---

1. The lease in question was never presented nor admitted into evidence in this case. The parties, however, do not dispute these facts.

Foertsch, the owner of Donlin Corp., testified that the mineral rights were not severed from the surface rights and, therefore, Kevin Masterson received both in the conveyance.

With respect to Frank and Florence's parcel, the chain of title is not so clearly established in the record. Both parties seem to agree that the property, including the mineral interests, was conveyed to a Molly Baumgartner (now deceased) at some point. Thereafter, Baumgartner (or her estate) transferred an undivided one-half interest in the real estate to Ruth and Ralph Werner and the other one-half interest to Don and Beverly Masterson. There are no deeds or transfer documents in the record before us regarding any of these prior transfers. The record does establish, however, that in late 2004 and early 2005, the Werners transferred by two warranty deeds all of their interest in the property to their son, John Werner, and their daughter, Ann Nestrick. In 1991, Don and Beverly Masterson also transferred by warranty deeds their undivided one-half interest in said real estate equally to the Beverly Masterson Family Trust and the Don Masterson Family Trust. None of the deeds reference a severance of mineral rights or a reservation of such rights.

At a tax sale on or about September 22, 2006, the Groomes purchased certificates of sale for the 0.0062500 and 0.08437600 royalty interests in and to the Varner Lease. According to the records of the county auditor, the owners of the mineral interests were J D Hopkins (the executor of Baumgartner's estate) and Odas Varner, respectively. The tax sale resulted from unpaid oil property taxes for the year 2005.[2]

On October 15, 2007, the Groomes filed verified petitions for issuance of the two tax deeds. Within nine months before filing these petitions, William Groome personally conducted a title search of the public records of Spencer County to ascertain ownership interests in the Varner Lease. Based upon his search, Groome concluded that the only parties with an interest in the royalty interests under the lease were the owners/lessors listed in the auditor's oil and gas lease records, Baumgartner and Odas Varner. Groome apparently provided notice of the tax sale to those parties, as well as to the lessee, Countrymark.[3] The two tax deeds at issue in the instant case were subsequently issued and then recorded in October 2007.

On April 8, 2008, Donlin Corp. and Kevin Masterson filed a complaint to set aside the tax deed that conveyed the 0.08437600 royalty interest under the Varner Lease to the Groomes. On that same date, the remaining appellees filed a complaint to set aside the tax deed that conveyed the 0.0062500 royalty interest under the Varner Lease. The Appellees claimed that the tax deeds were null and void because the Groomes failed to provide them notice as required by I.C. § 6–1.1–25–4.5. Following an evidentiary hearing, the trial court issued a written order, on August 4, 2008, declaring that the tax deeds were null and void and cancelled of record. Specifically, the court found that there had never been a severance of the mineral interests from the surface land and, therefore, the Appellees were entitled to notice of the tax

---

**2.** An oil or gas interest includes, inter alia, royalties, mineral rights, and working interests in any oil or gas located on or beneath the surface of the land. I.C. § 6–1.1–4–12.4(a) (West, PREMISE through 2008 2nd Regular Sess.). An oil or gas interest is subject to annual assessment and taxation as real property. I.C. § 6–1.1–4–12.4(b).

**3.** It appears that Countrymark was a successor in interest to the original lessee, Sun Oil.

sale/petition for tax deed, which was not provided by the Groomes. The Groomes now appeal.

### 1.

■ The Groomes argue the trial court did not have subject matter jurisdiction to set aside the tax deeds because the Appellees failed to file their complaints within sixty days of the issuance of the tax deeds, as required by I.C. § 6–1.1–25–4.6(h) (West, PREMISE through 2008 2nd Regular Sess.).

■ We initially observe that the Groomes improperly phrase the issue as one of subject matter jurisdiction.[4] "Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs." *K.S. v. State*, 849 N.E.2d 538, 540 (Ind.2006). The Groomes do not, and indeed cannot, argue that the trial court did not have the general power to hear and decide cases dealing with the issuance of tax deeds. Because we are not addressing a question of subject matter jurisdiction and because the Groomes did not challenge the timeliness of the Appellees' complaints prior to the instant appeal, the issue is waived. *See Packard v. Shoopman*, 852 N.E.2d 927, 931–32 (Ind.2006) ("[b]ecause timeliness of filing does not affect the subject matter jurisdiction of the Tax Court, any objection to the timeliness of filing is a procedural rather than jurisdictional error that can be waived if not raised at the appropriate time"). *See also K.S. v. State*, 849 N.E.2d at 541 ("[f]ar too often there is an inclination in a law suit to attempt to convert a legal issue into one of 'jurisdiction' and from that point contend all actions of the court are void, and that the question of jurisdiction may be raised at any time") (quoting *J.I. Case Co. v. Sandefur*, 245 Ind. 213, 197 N.E.2d 519 (1964)). Waiver aside, the Groomes' argument lacks merit.

■ It is well established that a tax deed can be appealed by either an independent action or by a motion pursuant to Trial Rule 60(B). *See, e.g., Diversified Investments, LLC v. U.S. Bank, NA*, 838 N.E.2d 536 (Ind.Ct.App.2005), *trans. denied; B P Amoco Corp. v. Szymanski*, 808 N.E.2d 683 (Ind.Ct.App.2004), *trans. denied*. In either case, the appeal must be filed in the same trial court that issued the original tax deed. *B P Amoco Corp. v. Szymanski*, 808 N.E.2d 683. "Since the same trial court retains jurisdiction over the appeal, the difference between a motion under T.R. 60(B) or an independent action pursuant to T.R. 60(B) becomes immaterial." *Id.* at 689. Although both remedies are subject to the sixty-day time

---

4. We recognize that *Edwards v. Neace*, 898 N.E.2d 343 (Ind.Ct.App.2008), a recent opinion written by a member of this panel, addressed an issue similar to the one before us, at least partially, in terms of subject matter jurisdiction. This was likely attributable to the fact that the parties, as do the parties in the instant case, presumed subject matter jurisdiction was a function of whether the complaint was timely filed. Thus, while the parties focused their respective arguments on whether the petition was timely filed, they assumed that the resolution of the timeliness question determined whether subject matter jurisdiction was present. In short, there was no independent analysis of whether subject matter jurisdiction was implicated in the first place. Contrary to that aspect of the holding in *Edwards*, as well as its companion case of *In re 2005 Tax Sale Parcel No. 24006–001–0022–01*, 898 N.E.2d 349 (Ind.Ct.App.2008), we think the better view is that the timeliness question does not implicate subject matter jurisdiction one way or the other. We note here that our colleague who authored those opinions, upon further reflection, concurs in this view and wishes to go on record as repudiating that aspect of her vote in the prior opinions.

limit set forth in I.C. § 6–1.1–25–4.6(h),[5] "[a]n exception exists where a motion for relief from judgment alleges a tax deed is void due to constitutionally inadequate notice, in which case an appeal must be brought within a reasonable time rather than within sixty days." *Diversified Investments, LLC v. U.S. Bank, NA,* 838 N.E.2d at 545.

■ In the instant case, the separate actions were properly filed in the same trial court that ordered the issuance of the tax deeds. Further, the basis of the challenge to the deeds was that they were null and void due to lack of notice. *See* I.C. § 6–1.1–25–4.5 (entitlement to tax deed only with proper notice); *Schaefer v. Kumar,* 804 N.E.2d 184, 192 (Ind.Ct.App. 2004) ("tax deed is void if the former owner was not given constitutionally adequate notice of the tax sale proceedings"), *trans. denied.* While not titled as such, the complaints to set aside the tax deeds were clearly in the nature of T.R. 60(B) motions.

*See MDM Investments v. City of Carmel,* 740 N.E.2d 929 (Ind.Ct.App.2000). Therefore, the Appellees were entitled to bring the independent action within a reasonable time pursuant to T.R. 60(B).[6]

2.

■ The Groomes next argue that the trial court erred in determining that the Appellees were persons required to be noticed under I.C. § 6–1.1–25–4.5. Specifically, the Groomes contend the Appellees did not present any evidence that they were the owners of any interest in the Varner Lease or that they were persons with a substantial property interest of record in the Varner Lease.

Within nine months of the tax sale, a purchaser of real property is required to give notice of the sale, by certified mail, to "the owner of record at the time of the sale and any person with a substantial property interest of public record in the tract or real property."[7] I.C. § 6–1.1–25–

---

5. I.C. § 6–1.1–25–4.6(h) provides: "A tax deed issued under this section is incontestable except by appeal from the order of the court directing the county auditor to issue the tax deed filed not later than sixty (60) days after the date of the court's order."

6. The Groomes do not contend that the complaints were not filed within a reasonable time.

7. At a minimum, the notice shall include the following:
(1) A statement that a petition for a tax deed will be filed on or after a specified date.
(2) The date on or after which the petitioner intends to petition for a tax deed to be issued.
(3) A description of the tract or real property shown on the certificate of sale.
(4) The date the tract or real property was sold at a tax sale.
(5) The name of the:
  (A) purchaser or purchaser's assignee. . . .

(6) A statement that any person may redeem the tract or real property.
(7) The components of the amount required to redeem the tract or real property.
(8) A statement that an entity identified in subdivision (5) is entitled to reimbursement for additional taxes or special assessments on the tract or real property that were paid by the entity subsequent to the tax sale, lien acquisition, or purchase of the certificate of sale, and before redemption, plus interest.
(9) A statement that the tract or real property has not been redeemed.
(10) A statement that an entity identified in subdivision (5) is entitled to receive a deed for the tract or real property if it is not redeemed before the expiration of the period of redemption specified in section 4 of this chapter.
(11) A statement that an entity identified in subdivision (5) is entitled to reimbursement for costs described in section 2(e) of this chapter.
(12) The date of expiration of the period of redemption specified in section 4 of this chapter.

4.5(a)(3). At trial, the Appellees established that they were owners of record of the parcels of land that were subject to the Varner Lease. The Appellees argued below, and the trial court ultimately agreed, that there had been no severance of the mineral rights from the surface rights with respect to the parcels in question and, therefore, the Appellees, as owners, were entitled to notice of the tax sale. We agree.

When an oil and gas lease is executed, the lessor does not convey title to the oil under his land, for that is an interest in real estate. *Foertsch v. Schaus*, 477 N.E.2d 566 (Ind.Ct.App.1985), *trans. denied.* Rather, the lease creates in the lessee an exclusive right to explore and reduce the oil to the lessee's possession, at which time it becomes the lessee's personal property. *Id.* Under such a lease, the lessor/landowner retains the right to the surface, subject to the lessee's right of ingress to and egress from the sub-surface, a reversionary interest in any oil remaining after the termination of the lease, and a right to royalties on oil produced by the lessee during the term of the lease. *Id.* "Each of these interests may be independently conveyed or assigned by the lessor." *Id.* at 571. Thus, when the lessor/landowner conveys a fee simple portion of the leased premises the grantee obtains an immediate right to royalties under the lease, the reversionary interest in any oil remaining after the termination of the lease, and a right to the surface acreage. *Foertsch v. Schaus*, 477 N.E.2d 566. Of course, the grantor can reserve an interest in the mineral rights/royalties by an express provision in the deed. *Id.; Miller v. Weber*, 839 N.E.2d 204, 209 (Ind.Ct.App.2005) (when property owner "carved a mineral interest out of the fee simple interest in her 1974 deed to the [grantees], she created a mineral interest separate from the surface rights"), *trans. denied.*

There is no indication in the record before us that the mineral interests were ever severed from the surface land. In fact, the deed from Odas Varner's estate to Donlin Corp. reserved no interest to the estate but was specifically made subject to the Varner Lease. Thus, Donlin Corp. obtained a right to royalties under the lease, a reversionary interest in any oil remaining after the term of the lease, and rights to the surface land. *See Foertsch v. Schaus*, 477 N.E.2d 566. (noting that deed reserved no interest in mineral rights to grantor). Further, Foertsch testified that when Donlin Corp. subsequently conveyed a portion of the land to Kevin Masterson, the mineral interests were not severed from the surface rights.

As set forth above, the chain of title with respect to Frank and Florence's parcel, which is now owned by the remaining Appellees, is not so clearly established in the record. The Groomes argue that the right to royalties from the Varner Lease could have been conveyed independently from the surface rights at any time prior to the Appellees' acquisition of the land. The Groomes would have us require the Appellees, the land owners of record, to prove that the mineral rights were never severed from the land. We decline to saddle the landowners with the burden of having to

---

(13) A statement that if the property is not redeemed, the owner of record at the time the tax deed is issued may have a right to the tax sale surplus, if any.

(14) The street address, if any, or a common description of the tract or real property.

(15) The key number or parcel number of the tract or real property.

I.C. § 6–1.1–25–4.5(e).

prove a negative. Rather, once the Appellees established their ownership in the land, it was incumbent upon the Groomes to come forward with evidence that the mineral interests had been severed from the land and that said interests had been recorded.

■■■■ A "mineral interest" is an interest that is created *by an instrument* that transfers, by grant, assignment, reservation, or otherwise an interest of any kind in coal, oil and gas, and other minerals. Ind.Code Ann. § 32–23–10–1 (West, PREMISE through 2008 2nd Regular Sess.). *See also Miller v. Weber,* 839 N.E.2d 204. Further, a mineral interest that has been severed from the surface land is real property subject to taxation. *See Miller v. Weber,* 839 N.E.2d 204. As such, the interest must be created by deed and must be duly recorded. *See id.* at 210 ("the statutory mandate that all deeds, including those conveying mineral interests, be recorded ... creat[es] a public record of the owners of such interests"). *See also* Ind.Code Ann. § 32–21–1–13 (West, PREMISE through 2008 2nd Regular Sess.) (requirements of deed); I.C. § 32–21–4–1 (West, PREMISE through 2008 2nd Regular Sess.) (general recording statute requiring deeds conveying real property to be recorded with the county recorder).

Thus, if the mineral rights were ever severed from the surface rights with respect to the land in question, the Groomes could have readily established this with the records from the county recorder's office. It was not sufficient for the Groomes to rely solely on the oil and gas lease records in the county auditor's office to determine ownership of the mineral rights.[8] *Cf. Miller v. Weber,* 839 N.E.2d 204 (observing that a complete title search may require an examination of records in the offices of the recorder, auditor, assessor, treasurer, sheriff, and clerk of the courts in the county where the real estate is located). The evidence presented at trial was sufficient to establish that the Appellees owned the property in question and were entitled to notice.

3.

■■■ Finally, the Groomes argue the Appellees failed to present any evidence that notices were not mailed to each of them in accordance with the statutory requirement. The notice statute requires that notice be sent by certified mail to the address for the person included in the public record, with no requirement that the notice is actually received. I.C. § 6–1.1–25–4.5(d) and (h). *See also Diversified Investments, LLC v. U.S. Bank, NA,* 838 N.E.2d 536. The Groomes cite *Diversified* for the proposition that "issuance of a tax deed creates a presumption that a tax sale and all of the steps leading up to the issuance of the tax deed are proper, although this presumption may be rebutted by affirmative evidence to the contrary." *Id.* at 542.

We find the Groomes' argument in this regard completely disingenuous, as William Groome's entire argument to the trial court was that he was not required to send notices to the Appellees because they were not owners. To be sure, counsel for the Appellees asked Groome, "did you or anyone under your instruction or control send

---

**8.** At trial, the Appellees indicated that they were properly listed in the auditor's transfer books as the owners of the parcels in question. The records, however, were apparently not carried forward by the auditor's office with respect to the oil and gas lease books. Therefore, the tax bills with respect to the lease were being sent to the wrong people. Werner, a real estate attorney, testified, "I do know these oil well taxing interest [sic] are not handled very well in different places in the Courthouse." *Transcript* at 31.

to the owners of the minerals, the plaintiffs in this cause of action, a certified letter?" *Transcript* at 5. Groome's answer, though not directly responsive to the question, is enlightening: "They do not own the minerals. This Baumgartner did, Molly Baurmgartner [sic]." *Id.* at 6. One can reasonably infer from this answer, as well as from his other testimony and pro-se arguments at the hearing, that he did not send notices to the Appellees. Further, John Werner testified that his address was correctly listed in the relevant public records and that he had "never received any certified letters pursuant to Indiana statute as far as notice of the tax sale". *Id.* at 10. In a similar vein, Foertsch testified that Donlin Corp. had not received "any certified letter saying that there was a delinquency on minerals". *Id.* at 22. The trial court did not err in determining that the Groomes did not provide the Appellees with notice as required by I.C. § 6–1.1–25–4.5.

Judgment affirmed.

NAJAM, J., and VAIDIK, J., concur.